[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT DATED OCTOBER 23, 1991 (NO. 116.00)
This case comes to this court seeking an order of CT Page 2253 contempt on the orders of Judge Hauser dated May 20, 1991. Judge Hauser rendered his decision from the bench. The plaintiff is hereinafter called the husband or father. The defendant is hereinafter called the wife or mother.
The case would not have been in this court had the husband complied with the orders of the court in the beginning. He chose to seek control of the situation and to do things his way rather than the court's way. For instance, he was ordered to pay the defendant on September 1, 1991, the sum of $1,000.00. The plaintiff chose not to do that because he believed he had a credit. The judge did not say to him that he may be excused from paying if there was a credit due him.
The court heard the parties and their evidence. The court reviewed the exhibits in the case as well as listened to the arguments of counsel and read their briefs. The court has considered all relevant statutory criteria including Connecticut General Statutes 46b-87.
The plaintiff was further ordered to pay two thirds of the St. Joseph's tuition before the commencement of the academic year for the next two years. He chose not to do that but rather to try to make some arrangements concerning periodic payment.
The plaintiff was ordered in no uncertain terms to convey all of his right, title and interest in the property located at 224 Goddard Avenue, Bridgeport, to Mrs. Fuchs. He did not do that until the proceedings started on this motion in open court. Claiming that his lawyer had the deed is not a sufficient defense to an order. Why wasn't it done twenty days after the appeal period had run?
The credibility of the husband in this case is put in question immediately when he testified under oath that he did not receive the papers that began this contempt. The deputy sheriff testified under oath that he served the plaintiff the papers in the manner described by him. This court found more credible the testimony of the deputy sheriff. CT Page 2254
1. As to alimony and support arrearages, the court finds the plaintiff to be in willful violation of a court order and in arrears on the alimony and support in the sum of $780.00. The plaintiff was ordered to pay $175.00 per week commencing May 20, 1991, and that order was increased to $240.00 per week commencing July 12, 1991, which order was reconfirmed September 6, 1991. The arrearage to February 2, 1992, equals $780.00.
2. The husband was ordered to make a lump sum payment on September 1, 1991. He has not made that payment. He is in willful violation of a court order.
3. The father was ordered to pay two thirds of the 1991/1992 tuition to St. Joseph's High School for his daughter Mary before the commencement of the fall term. This amount was $2,530.80. He has not made that payment. He is in willful violation of a court order.
4. The father was ordered on May 20, 1991, to pay the total IRS deficiency listed on his financial affidavit for the 1988 tax year in the amount of $4,100.00 plus interest and penalties. The transcript of the proceedings before Judge Hauser indicates that the attorney for the husband asked for clarification on that and was specifically told that the husband was responsible for the 1988 tax deficiency. The wife's refund was seized by Internal Revenue Service when the husband did not make that payment, and they took from her $2,198.64. She should have been paid that by him, and the defendant is, therefore, in willful violation of the court order and she suffered those damages.
5. The father was ordered on May 20, 1991, to transfer his interest in the marital home to the mother. On July 11, 1991, the husband's attorney was ordered to review the quitclaim deed and have the husband sign it within several days and return it. It was not done until the proceedings in open court. The husband is found in violation of the court order concerning the transfer of the property.
6. The husband was ordered on May 20, 1991, to transfer one third of his Sikorsky pension to his wife. He has failed to do so. He is ordered within thirty (30) days from the date of this decision to sign a QDRO in a form satisfactory to the wife. He is not found to be in violation of a court order since, apparently, the parties have been negotiating the form of the order.
7. People's Bank arrearage: The court, Hauser, J., on page 11 of the transcript of the proceedings of May 20, 1991, CT Page 2255 ordered the husband, "He will bring up the arrearage on the People's Savings Bank . . . within three weeks." The best evidence submitted at the time of the trial was that the arrearage on May 20 equalled $2,480.40, principal and interest, from January, 1991, through May of 1991. At that time there were late fees of $60.24 from December, 1990, through May of 1991, for a total due of $2,540.64. In addition, the evidence indicates that this matter had been referred for foreclosure. Foreclosure fees were due at that time to the attorney representing the bank in the sum of $500.00 and for a foreclosure title search in the sum of $150.00. Thus, the total arrearage to be paid by him was $3,190.64.
 The husband paid the bank $3,036.72 on July 9th which amount did not pay in full the foreclosure fees but was $154.64 short. Defendant's Exhibits One and Two lay out the wife's claim. As a result of the amount not having been paid in full, all of the funds were put in what was called a suspense account at People's Bank. The bank has assessed a late charge of $10.04 to the wife every month of for additional late fees of $80.32 through January 1, 1992 from June of 1991 which has also not been paid.
 Therefore, the husband owes to the People's Savings Bank a total of $234.24.
8. The next issue is the Sikorsky equity loan. The parties all agree that the order of Judge Hauser addressing this issue was found on page 11 of his May 20th, 1991, decision. He states as follows: "He [husband] will bring up the arrearage on the People's Savings Bank and second mortgage within three weeks." The second mortgage referred to is the Sikorsky equity line. The issue presented to this court is whether or not it was the husband's obligation to make payment on the May 30th payment date or if it was the wife's obligation to make the payment on the May 30th payment date.
 It is clear the judge's decision speaks as of May 20th. It is also clear that when Judge Hauser was presented this issue in July of 1991, as set forth in the transcript of July 11, 1991, he did not decide the matter from the bench. It is further clear that when he was confronted with these issues in the form of motions for articulation and otherwise he rejected the opportunity to clarify this.
 This court finds the order clear. If the husband had paid the amount due on May 21st, the day after the decision, it would be clear to me that his obligation would have ended CT Page 2256 at that time and he would not have been obligated to make the May 30th payment. However, this court reads the arrearage to mean the arrearage when the payment is made. So that when he made the payment, which is agreed on that it was after May 30th, in fact the May 30th payment was due. Accordingly, it was his obligation to make that May, 1991 payment since that was now part of an arrearage.
 This court reads arrearage to speak as of the date the payment is made. This is further confirmed by the fact that it was clear from the wife's financial affidavit that she did not have the ability to make the May payment of $898.18.
 Further, it is clear that the month was well underway when the order was made. By that, this court means that 20 days of the month had already passed towards a 30th payment date. The fact that he was given time to make the payment also would indicate that it was contemplated that the payment due in May was his responsibility.
 Accordingly, this court finds that it was his obligation to have made that payment. This court further finds him to be in willful violation of that order since it is clear that he did not make the payment within the three (3) weeks ordered. He apparently made the payment on July 3, 1991.
9. The husband, being in willful violation of court orders, the court finds the interest computed by the wife as set forth on page 11 of her Hearing Memorandum in Support of Motions Dated February 6, 1992, to properly reflect the interest, and accordingly, interest is awarded on the lump sum alimony of $43.20. On the St. Joseph tuition, interest is awarded in the sum of $110.89. On the IRS, interest is awarded in the sum of $146.40.
10. The court further finds that the attorney's fees expended in this case are fair and reasonable and are as set forth in the January 24, 1992 affidavit showing total fees of $2,686.60 and on February 6, 1992, additional attorney's fees, of $1,282.50. The law allowing attorney's fees is too clear to require citation. Our statutes further make provision for the award of attorney's fees in contempt proceedings. Connecticut General Statutes 46b-87 makes such provision. The husband is in contempt of court. The court orders the husband to pay $3,000.00 towards the wife's attorney's fees and costs which are in the total amount of $3,969.10.
11. The husband may deduct from the total amounts due the CT Page 2257 credit for the June, 1991, payment on the second mortgage of $898.18, which amount may be deducted from the payment due on the attorney's fees so that the amount of attorney's fees due would be $2,101.82.
12. Accordingly, the husband is ordered to pay the total amount of $8,146.39.
 This amount, $8,146.39, is to be reduced by the amount being held as the purge amount of $5,785.00. That money is ordered turned over to the wife forthwith, and the remaining amount of $2,361.39 is to be paid to the wife within thirty (30) days of the date of this decision.
The motion to vacate capias and bond order of February 3, 1992, filed by the husband is denied.
EDWARD R. KARAZIN, JR., JUDGE